AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

FILED

United States District Co[urt]
Albuquerque, New Mex[ico]

Mitchell R. Elfers
Clerk of Court

|  |  |  |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>3810 Villa Serena Place SW, Albuquerque NM 87121 | )<br>)<br>)<br>)<br>)<br>) | Case No.   **23mr2011** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

    I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

  See Attachment A

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

  See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846; | Possession with intent to distribute controlled substances and conspiracy; |
| 18 U.S.C. §§ 922(g)(1) and 924 | Possession of a firearm and ammunition by a convicted felon; |
| 18 U.S.C. § 924(c) | Possession of a firearm in furtherance of a drug trafficking crime |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Christopher Maestas, TFO
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephonically sworn and electronically signed_____ *(specify reliable electronic means).*

Date:   October 19, 2023

_____
*Judge's signature*

City and state:  Albuquerque, NM

Kirtan Khalsa, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

### INTRODUCTION

1.      I, Christopher Maestas, Task Force Officer of the Federal Bureau of Investigation ("FBI"), being first duly sworn, make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the residence of Thomas JARAMILLO, a.k.a. "CASPER," (hereinafter "JARAMILLO) 3810 Villa Serena Place Southwest, Albuquerque, New Mexico (Subject Premises). I am requesting a warrant to search the Subject Premises for the items listed in Attachment B, which has been attached hereto and incorporated herein by reference.

2.      A more detailed description and photographs of the Subject Premises are contained within Attachment A, which has been attached hereto and incorporated herein by reference.

### PURPOSE OF THE AFFIDAVIT

3.      Within the last two weeks, the FBI's Violent Gang Task Force ("VGTF") has received new information that JARAMILLO is trafficking firearms and heroin. JARAMILLO, however, has been on the VGTF's radar for over a year. In the pages that follow, I will outline relevant information concerning the VGTF's year-long investigation into JARAMILLO. JARAMILLO is a Sureños gang member and is a source of drug supply to other gangs, including the Brew Town Locos. Further, VGTF agents obtained an arrest warrant (23mj1439) for JARAMILLO for one violation of 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm and Ammunition, which was signed on September 21, 2023 by the Honorable B. Paul Briones.

4.      Based on the facts and information contained herein, I believe the Subject Premises contains evidence, fruits, and instrumentalities of violations of:

   a.   21 U.S.C. §§ 841(a)(1) and 846, that being possession with intent to distribute controlled substances and conspiracy thereto;

   b.   18 U.S.C. §§ 922(g)(1) and 924, that being possession of a firearm and ammunition by a convicted felon; and

   c.   18 U.S.C. § 924(c), that being possession of a firearm in furtherance of a drug trafficking crime (hereinafter the "target offenses").

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

5.      This affidavit does not set forth all of my knowledge or summarize all of the investigative efforts in this matter; however, the affidavit sets forth only the facts that support probable cause to search the Subject Premises as relevant background information. All figures, times, and calculations set forth herein are approximate.

## AFFIANT'S RELEVANT TRAINING AND EXPERIENCE

6.      I have been a law enforcement officer for approximately twenty-two years and am employed as a Task Force Officer (TFO) with the Rio Rancho Police Department (RRPD). I am currently assigned to the Violent Gang Task Force (VGTF) at the Albuquerque Field Office of the Federal Bureau of Investigation (FBI). I primarily investigate transnational organized crime, gang-criminal enterprises, and drug trafficking organizations involved in unlawful possession of firearms, distribution of controlled substances, racketeering activities, and conspiracies associated with these offenses.

7.      I have received on the job training from other experienced agents, detectives, and correctional officers in the investigation of gangs and criminal organizations. My investigative training and experience include, but is not limited to, interviewing subjects, targets, and witnesses; writing affidavits for and executing search and arrest warrants; managing cooperating sources; collecting evidence; conducting surveillance; and analyzing public records.

8.      Through my training and experience, I am familiar with the methods and means used by individuals, drug trafficking organizations ("DTO"s), and gang/criminal enterprises to purchase, transport, store, and distribute controlled substances and firearms. I am also familiar with how those individuals and organizations hide the substantial profits generated from their criminal activities. I am aware that those individuals conceal firearms on their person as well as evidence of their drug trafficking, to include illegal narcotics and large amounts of United States Currency.

9.      I know that firearms are tools of the trade and instrumentalities of the crime of drug trafficking, particularly in instances involving subjects who have committed prior violent crimes and/or firearms violations. It has been my experience that criminals who illegally possess firearms often do not

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

part with such firearms, as it may be difficult for criminals to acquire them. I know that gang members often possess firearms on or near their person, in their vehicles and residences. I know that individuals who are prohibited from possessing firearms know they are not allowed to possess those firearms, therefore they will secrete those firearms within their vehicles, outbuildings, or residences.

10.     It has been my experience that individuals engaged in drug trafficking and gang activities possess firearms to facilitate their illegal activities. I am aware that members of DTO's and gang members often possess firearms to protect the often-substantial profits from selling narcotics. Also, I have learned that gang members possess firearms to threaten other individuals and assault other gang members in an effort to establish their gang as powerful and successful.

11.     Based upon my training, experience, and participation in gang/criminal enterprises and DTO's, I am aware individuals engaged in drug trafficking maintain documents, letters and records relating to their illegal activities for long periods of time. This documentary evidence is usually secreted in their place of residence, or the residences of family members, friends, or associates, in their business locations, or in stash houses. This documentary evidence includes telephone numbers, address books, travel receipts, notes referencing aliases or coded names, false identification, money order receipts, money orders, money remittance receipts, pre-paid money cards such as, MoneyPak, Wal-Mart, Green Dot, or other debit cards, bulk U.S currency, money collection logs, such as "tally" sheets, drug load sheets, shipping/mailing receipts, detention facility inmate number lists or addresses for inmates or detention facilities.

12.     I know that members and associates of gang/criminal enterprises and DTOs often make substantial profits from their drug trafficking ventures. Often times, individuals engaged in drug trafficking do not deposit their profits into the bank so as to avoid detention by law enforcement. I know that individuals engaged in drug trafficking often keep large amounts of United States Currency at their residence. Along with United States Currency, I know that members engaged in drug trafficking may purchase expensive jewelry with their drug proceeds to avoid detection. Therefore, I know that members engaged in drug trafficking may have expensive jewelry which is the result of their drug trafficking operations.

13.     Individuals engaged in drug trafficking are weary of law enforcement surveillance as well

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

as other criminals who would steal their drugs or drug trafficking proceeds. Therefore, I know individuals engaged in drug trafficking to use surreptitious and overt video and audio recording devices at their residences, store video and audio recordings in hard drives or other electronic storage devices and have real-time access to video and audio surveillance via applications on their smartphones.

14.     I know that members and associates of gang/criminal enterprises and DTOs have access to numerous cellular phones, often at the same time, in an effort to avoid law enforcement monitoring. I have observed gang members, who are involved in drug trafficking, routinely use pre-paid phones requiring no subscriber information, or fictitious subscriber names, to advance their unlawful activities. These cellular telephones often contain names and phone numbers of other co-conspirators, text messages utilized to further their illicit activities, photographs and videos of gang members, controlled substances, drug proceeds, or firearms. I have observed incarcerated members of gang/criminal enterprises utilize non-gang member's personal identification number when making prison/jail telephone calls to mask their conversations and decrease the likelihood institutional gang investigators will monitor the call. Members of gang/criminal enterprises and DTOs often use the same strategy to mask their ownership of vehicles, real property, and utility services, in an effort to avoid detection by law enforcement. I am aware NMCD and BOP inmates are able to utilize email services while incarcerated and believe those services are widely used by the inmates.

15.     In addition, I am also familiar with the use of text messaging, instant messaging, social media, and other messaging applications, used by gang/criminal enterprises and DTOs to advance their unlawful activities.

16.     I have learned individuals involved in the distribution of controlled substances often conceal evidence of their drug trafficking activities on their person or in their residences and businesses, or the residences of friends or relatives, and in surrounding areas to which they have ready access, such as garages, carports, and outbuildings. They also conceal evidence in vehicles, including vehicles outside of their residences, so that they have ready access to it and so that they can hide it from law enforcement officers executing search warrants at their residences or businesses. Such evidence includes controlled

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

substances, packaging materials such as baggies, rubber bands, shrink wrap, heat sealers, and drug presses, other drug use and trafficking paraphernalia such as pipes and scales.

17.      It has been my experience members of gang/criminal enterprises and DTOs often maintain records of their transactions in a similar manner to the record keeping procedures of legitimate businesses. Even after the drugs are sold, documentary records often remain for long periods of time, even years, to memorialize past transactions, especially when debts remain open. I have located notes documenting the status of accounts receivable and accounts payable, and the names and phone numbers of suppliers, customers, and co-conspirators, and other associates who have assisted drug traffickers in other ways, such as helping with the cleansing of otherwise "dirty" money. I am aware such proceeds may be made to appear "clean" through a variety of means, including investments into legitimate enterprises and structuring deposits of large amounts of U.S. Currency into financial institutions in such a way so as to avoid the detection by law enforcement, as well as reporting requirements of banking institutions. These records can be maintained on paper, in the form of business and personal ledgers and diaries, calendars, memoranda, pay-owe sheets, drug ledgers, IOUs, miscellaneous notes, money orders, customer lists, and phone address books, in either hard copy or electronic form. I have personally been involved in search warrants which resulted in the discovery of such records that were more than a year old.

18.      I have learned individuals involved in gang/criminal enterprises and DTOs possess items of identification, including but not limited to, driver's licenses, rent receipts, bills, and address books. These items may be relevant to the identity of those involved in the criminal enterprise, the possessor of the items seized, and occupants of the premises searched.

### BIOMETRIC ACCESS TO DEVICES

19.      Based on my experience, I am aware gang/criminal enterprises and drug traffickers utilize cellular telephones to exchange information, photographs, and felonious communications, to include the names and locations of informants, witnesses, victims. I have also observed gang members discuss the acquisition and distribution of firearms to and from other members, as well as discussions about gang

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

related assaults.

20.      I know from my training and experience investigating criminal gangs and drug trafficking organizations that cellular telephones contain evidence of criminal conduct. More specifically, it has been my experience that cellular telephones are utilized to communicate drug prices, availability, quantity, and the contact information for customers and suppliers. I have also discovered photographs of controlled substances and firearms on cell phones.

21.      I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners, facial recognition features and iris recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

       a.   If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

       b.   If a device is equipped with a facial-recognition feature, a user may enable the ability to unlock the device through his or her face. For example, this feature is available on certain Android devices and is called "Trusted Face." During the Trusted Face registration process, the user holds the device in front of his or her face. The device's front-facing camera then analyzes, and records data based on the user's facial characteristics. The device can then be unlocked if the front-facing camera detects a face with characteristics

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Trusted Face.

c.   If a device is equipped with an iris-recognition feature, a user may enable the ability to unlock the device with his or her irises. For example, on certain Microsoft devices, this feature is called "Windows Hello." During the Windows Hello registration, a user registers his or her irises by holding the device in front of his or her face. The device then directs an infrared light toward the user's face and activates an infrared-sensitive camera to record data based on patterns within the user's irises. The device can then be unlocked if the infrared-sensitive camera detects the registered irises. Iris-recognition features found on devices produced by other manufacturers have different names but operate similarly to Windows Hello.

d.   In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the device.

e.   As discussed in this Affidavit, I have reason to believe that one or more digital devices will be found during the search. The passcode or password that would unlock the devices subject to search under this warrant currently is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the devices, making the use of biometric features necessary to the execution of the search authorized by this warrant.

f.   I also know from my training and experience, as well as from information found in

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when: (1) more than 48 hours has elapsed since the device was last unlocked; or, (2) when the device has not been unlocked using a fingerprint for 8 hours *and* the passcode or password has not been entered in the last 6 days. Similarly, certain Android devices cannot be unlocked with Trusted Face if the device has remained inactive for four hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

g.   Due to the foregoing, if law enforcement personnel encounter any devices that are subject to seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, I request permission to: (1) press or swipe the fingers (including thumbs) of the Target Subjects to the fingerprint scanner of the devices found at the Subject Premises; (2) hold the devices found at the Subject Premises in front of the face of Target Subjects and activate the facial recognition feature; and/or (3) hold the devices found at the Subject Premises in front of the face of Target Subjects and activate the iris recognition feature, for the purpose of attempting to unlock the devices in order to search the contents as authorized by this warrant. The proposed warrant does not authorize law enforcement to request that Target Subjects state or otherwise provide the password or any other means that may be used to unlock or access the devices. Moreover, the proposed warrant does not authorize law enforcement to ask Target Subjects to identify the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

### THE TARGET SUBJECT

22.     JARAMILLO was the target of a previous VGTF search warrant, wherein numerous search warrants were executed on September 1, 2022. During the execution of the aforementioned federal search warrants, the VGTF searched JARAMILLO's residence, the Subject Premises, and seized a firearm from JARAMILLO's vehicle. The firearm was later analyzed by the FBI laboratory and compared to JARAMILLO's DNA. JARAMILLO's DNA was located on the firearm and an arrest warrant later obtained for JARAMILLO.

23.     I have reviewed JARAMILLO's criminal history, I am aware that he has been arrested numerous times in New Mexico and Utah, and has been convicted of the following felony offenses:

    a.  Trafficking (By Distribution) (Methamphetamine) (CR-2012-05413) in October 2012, in the Bernalillo County District Court; and

    b.  Trafficking (By Distribution) (Methamphetamine) (CR-2012-04293) in July 2012, in the Bernalillo County District Court.

### The Confidential Human Sources

24.     During the course of this investigation, VGTF agents utilized three Confidential Human Sources ("CHS") to infiltrate and report on the activities of JARAMILLO. The FBI utilizes the term CHS to describe an informant; however, other agencies may use the terms Confidential Source (CS), Confidential Informant (CI), Confidential Witness (CW), or Source of Information (SOI). Herein, I have also used the term CHS to describe a Cooperating Defendant (CD). I believe the various terms are interchangeable, but for the purpose of this affidavit I have only used the term CHS.

25.     In the paragraphs that follow, I have provided an overview of each CHS, to include their basis of knowledge concerning the criminal conduct; motivation to assist the FBI; criminal history; any compensation received from the government; and a statement concerning their reliability.

26.     I have tried to provide sufficient information to the Court, while balancing the anonymity

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

and safety of the various sources.

27.     CHS-1 is a veteran gang member and is an experienced drug trafficker. CHS-1 has provided assistance in two other FBI investigations. CHS-1 is motivated to assist the FBI in hopes to receive a positive recommendation in a current criminal matter. I believe the information provided by CHS-1 to be reliable because much of it has been corroborated by independent investigation, and surveillance. I am unaware of any false or misleading information that CHS-1 has provided. CHS-1 has been convicted of felony crimes to include theft, domestic violence, conspiracy, battery, and possession of a controlled substance. CHS-1 has received no monetary compensation for their cooperation.

28.     CHS-2 is an intimate associate to veteran gang members and drug traffickers. CHS-2 is motivated to assist the FBI in hopes to receive a positive recommendation in a current criminal matter. I believe the information provided by CHS-2 to be reliable because much of it has been corroborated by independent investigation, and surveillance. I am unaware of any false or misleading information that CHS-2 has provided. CHS-2 has been convicted of felony crimes of great bodily injury by vehicle and burglary. CHS-2 has received $1,000.00 in compensation for their cooperation.

29.     CHS-3 is an intimate associate to veteran gang members and is an experienced drug trafficker. I am unsure of CHS-3's motivation to assist the FBI but believe it may have been because CHS-3 believed that by providing information to the FBI they may receive a positive recommendation in a current criminal matter. I believe the information provided by CHS-3 to be reliable because much of it has been corroborated by independent investigation, and surveillance. I am unaware of any false or misleading information that CHS-3 has provided. CHS-3 has been convicted of felony-controlled substances crimes and felony crimes involving theft. CHS-3 has received no monetary compensation for their cooperation.

## PROBABLE CAUSE

30.     Within the last week, CHS-1 observed JARAMILLO at the **Subject Premises** along with distribution quantities (Ounces) of heroin. JARAMILLO represented that he lived at the Subject Premises and had Heroin for sale to include broker narcotic transactions for other people. JARAMILLO was sourcing

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

drugs to whoever had money at the time.

31.     In September 2023, VGTF agents obtained an arrest warrant for JARAMILLO regarding the firearm which was located at the Subject Premises in September of 2022. The arrest warrant charged JARAMILLO with one violation of 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm and Ammunition, Case No. 23MJ1439. JARAMILLO has not been arrested on this warrant.

32.     In September 2023, CHS-2 advised VGTF agents that JARAMILLO drove a gold Lincoln sedan and rode a Harley Davidson motorcycle. CHS-2 also advised VGTF agents that they knew JARAMILLO sold Fentanyl pills by the thousands.

33.     In January 2023, a cooperating defendant (CHS-3) advised VGTF agents that JARAMILLO was bragging that agents missed 30 boats (30,000 Fentanyl pills) during the September 1, 2022, search warrant conducted at Subject Premises. CHS-3 regularly purchased narcotics from JARAMILLO and knew him to live at the Subject Premises.

34.     <u>Indicia of Residence</u>: Within the last 24 hours, VGTF agents observed a gold Lincoln passenger sedan parked in the driveway of Subject Premises. Within the last month, VGTF agents have observed the gold Lincoln passenger sedan parked in the driveway of the Subject Premises on more than 5 occasions. The gold Lincoln passenger sedan has New Mexico license plate BGHA41, which is registered to Jennifer Lester, who is believed to be JARAMILLO's girlfriend. A Harley Davidson motorcycle has also been seen parked in the driveway of the Subject Premise.

35.     According to the Bernalillo County Tax Assessors public access website, the Subject Premises is owned by JARAMILLO. A screen shot from the Bernalillo County Tax Assessors website has been attached hereto and incorporated herein in Attachment A.

## <u>CONCLUSION</u>

36.     Based on the information contained herein, I submit probable cause exists to search the **Subject Premises**, more fully described in Attachment A, for the items described in Attachment B, which are evidence, fruits, and/or instrumentalities of, or property intended for use in committing the target

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

offenses. This affidavit was reviewed by Assistant United States Attorney Paul Mysliwiec.

Respectfully submitted,

_____

Christopher Maestas
FBI Task Force Officer

Subscribed telephonically and sworn electronically on October 19, 2023.

_____

HONORABLE KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW MEXICO

Page **12** of **12**

**ATTACHMENT A**
**Premises to be Searched**

The Subject Premises to be Searched:

The Subject Premises is located at **3810 Villa Serena Place Southwest, Albuquerque, New Mexico**, **87121** described as a single-story residence with white siding and green trim. There are cameras positioned on all sides of the residence. The subject premises is surrounded by a brick wall along with a metal gate enclosing the property. The numbers 3810 are posted on the front of the residence, near the driveway. Color photographs are posted below. The search of the Subject Premises shall include the entire residence and all outbuildings, trash cans, storage containers, and vehicles parked at, or in front of, the Subject Premises.

Color photographs of the Subject Premises are attached below.



Photograph taken from, Bernalillo County Tax records, the red line is included from the records and outlines the entire property

**ATTACHMENT A**
**Premises to be Searched**



Surveillance photo

**ATTACHMENT A**
**Premises to be Searched**



Google Earth photo, from 3810 Villa Serena Pl SW, Albuquerque, NM

<u>Note</u>: The search of the Subject Premises shall include the entire residence and all outbuildings, trash

cans, and storage containers designated for use by the Subject Premises. The search shall also include

vehicles parked at, or in front of, the Subject Premises provided such vehicle has an apparent connection

**ATTACHMENT A**
**Premises to be Searched**

to the Subject Premises. Connection to the Subject Premises may be established by way of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.

<u>Biometric Access to Devices:</u> During the execution of the search of the premises described herein, law enforcement officers are also specifically authorized to compel THOMAS JARAMILLO, a.k.a. "Casper," to provide biometric features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, of:

1.  Any devices found at the premises.

2.  Where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments for the purpose of attempting to unlock the devices' security features in order to search the contents as authorized by this warrant. This warrant does not authorize law enforcement personnel to compel any other individuals found at the premises to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device. Further, this warrant does not authorize law enforcement personnel to request that the Subject state or otherwise provide the password or any other means that may be used to unlock or access another person's device(s), including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**ATTACHMENT B**
**Items to be Seized**

**Items and Subject to be Seized:** All evidence, fruits, and instrumentalities of violations of: 21 U.S.C. §§ 841(a)(1) and 846 distribution and possession with intent to distribute controlled substances and conspiracy thereto; 18 U.S.C. § 922(g)(1) possession of a firearm and ammunition by a convicted felon; and 18 U.S.C. § 924(c) possession of a firearm in furtherance of a drug trafficking crime to include the following:

1. Thomas JARAMILLO aka: Casper



2. Firearms, firearm parts, magazines, and ammunition;

3. All safes or lock boxes, where evidence of the Target Offenses may be stored for safekeeping against seizure;

4. Controlled substances, drug packaging materials, and paraphernalia;

5. Documents, notes, or writings detailing other individuals involved in the distribution of controlled substances;

**ATTACHMENT B**
**Items to be Seized**

6.  Large amounts of United States Currency and expensive jewelry;

7.  Cellular telephones believed to contain evidence of the Target Offenses;

8.  Video surveillance hard drives or storage devices;

9.  Articles of property tending to establish the identity of persons in control of premises, vehicles, storage areas, and containers being searched, including utility company receipts, rent receipts, addressed envelopes, and keys. All documentation, (whether on paper or stored magnetic, digital, or optical media) describing discussions by any individual or entity concerning: the identity of persons that are involved in violations of the Target Offenses;

10. All documents and communications (whether on paper or stored magnetic, digital, or optical media) demonstrating any communication or correspondence with any person or groups of persons involved in violations of the Target Offenses;

11. All evidence related to all off-site storage units, other residences, safety deposit boxes, etc. where evidence of the Target Offenses may be stored for safekeeping against seizure;

12. All cellular telephone records to establish ownership of the device or the residence.